# CASES

## FIRST DISTRICT

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1922.

---

### Stewart-Warner Speedometer Corporation, Appellant, v. A. P. Warner et al., Appellees.

### Gen. No. 27,303.

1. SALES—*construction of contract for purchase of capital stock of corporation.* In a transaction for the purchase of the capital stock of a corporation, under a guaranty that its assets amount to a certain sum, an agreement that the purchase price should be deposited in escrow until an audit should show the value of the assets to be as claimed and a later agreement that the purchase price should be paid at once and that any deficiency found by the audit in the assets would be refunded, were not inconsistent but should be construed together.

2. TRIAL—*date of execution of instrument as question of fact.* Where an agreement was executed in duplicate and one of the parties introduced evidence tending to show that its copy was lost and that it bore a certain date while the other party introduced an instrument purporting to be its copy bearing a different date but which the first party claimed was not a correct duplicate original, the evidence raised a question of fact as to the correct date of the agreement which should have been submitted to the jury.

(458)

3. SALES—*powers and duties of appraisers.* There is a clear distinction between arbitrators and appraisers, the latter not being confined to any particular methods or sources for their investigation, and it is entirely proper for them to talk with one of the parties concerning the matter under investigation.

4. SALES—*duty of one contesting inventory by appraisers.* It is for the party contesting the report made by appraisers employed to ascertain the value of property involved in a transaction to prove that their report was made unfairly or not in conformity with the contract.

5. SALES—*fairness of appraisal as question for jury.* Appraisers employed to ascertain the value of the materials and manufactured products of a corporation, in making certain reductions because of overhead expense and obsolescence, merely followed the usual method of ascertaining the value of such products, and the fairness of such reductions are matters of fact to be submitted to the jury.

Appeal from the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed June 26, 1922.

WINSTON, STRAWN & SHAW, for appellant; JOHN D. BLACK and J. SIDNEY CONDIT, of counsel.

JAMES M. SHEEAN and JEFFRIS, MOUAT, OESTREICH, AVERY & WOOD, for appellees; JAMES M. SHEEAN and O. A. OESTREICH, of counsel.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

This suit, an action in trespass on the case, was originally brought by M. H. Whitney. His death was subsequently suggested and the name of Stewart-Warner Speedometer Corporation, the real plaintiff, was substituted and all the pleadings amended accordingly. Upon trial the jury were instructed peremptorily to find the issues for the defendants and verdict was accordingly returned and judgment thereon was entered, from which plaintiff appeals. We are of the opinion that giving this instruction was error and that the case should have been submitted to the

460   Appellate Courts of Illinois.

Stewart-Warner Speedometer Corp. v. Warner, 225 Ill. App. 458.

jury upon issues of fact involved.

Plaintiff claims damages for the alleged failure of the defendants to fulfil certain undertakings and promises made by them in connection with the purchase by plaintiff from defendants of the capital stock, business and assets of the Warner Instrument Company. October 19, 1912, a four-month option contract was made, wherein plaintiff was given the option to buy for $1,720,000, and $5,000 earnest money was paid; the stock consisted of 300 shares of the par value of $100 each and purchase was based upon guarantees and warranties by defendants that the net cash value of the tangible assets of the Warner Instrument Company as of October 1, 1912, was in excess of $800,000; upon deposit of the purchase price in escrow the purchaser, by auditors and appraisers chosen by him, should have the right to inspect all books and property of the Warner Instrument Company for the purpose of verifying the correctness of the representations as to the value of the assets. Plaintiff asserts that December 21, 1912, within the option period, said parties made a supplementary agreement in which, after referring to the option contract, it was recited that the purchaser had been unable to obtain the amount for deposit in escrow, to abide the result of the investigation of the guarantees made in said agreement by defendants, but was able to obtain said sum at once if this supplementary agreement was executed. It was thereupon agreed that third parties procured by Whitney should pay $1,715,000 simultaneously with the execution of the agreement, and the entire capital stock transferred to the buyers, the defendants agreeing that the investigation of the warranties and guaranties by them made in the agreement of October 19, 1912, as to the values of the tangible assets, may be made by Arthur Young and Company as auditors to report the result of its investigation within thirty days "from this date"; and de-

fendants agreed upon demand to pay to the purchaser (plaintiff) "any sum which the said Arthur Young and Company may determine from such investigations, upon the basis aforesaid, that the net cash value of the tangible assets of said Warner Instrument Company, as of October 31, 1912, after deducting all liabilities of said company, shall be less than $800,000." If defendants should pay to the purchaser any sum found due as shortage as aforesaid, defendants would be reimbursed such shortage paid from plaintiff's collections of certain doubtful accounts receivable listed by Young and Company.

The purchase money was forthwith paid and the stock transferred. January 20, 1913, Young and Company reported that there was a shortage under the $800,000 guaranty of $72,718.99, and plaintiff claims that under the aforesaid contracts defendants are obligated to pay this, and because of their refusal so to do, asks for judgment against them.

The second contract was supplementary to the first and not a contract abrogating the first. By the second contract the parties agreed upon the details of the consummation of the first agreement. Instead of depositing the purchase price in escrow, pending the report of the appraisers on the value of the tangible assets, the purchase price was forthwith paid and the stock delivered with an agreement by the sellers to pay any shortage which appraisers might report. The two contracts refer to the same subject-matter, have the same objective and are between the same parties. They are not inconsistent in any respect and should be taken and construed together. *Cooke v. Murphy*, 70 Ill. 96; *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.*, 190 Ill. 404.

Upon the trial question arose as to the date of the supplementary agreement. Plaintiff asserted that this was December 21, 1912, hence the appraisers' report of January 20, 1913, was made within the agreed

limit of 30 days. Defendants assert that it was dated December 19, 1912, hence the report was not made until after the 30 days had expired. The trial court adopted the view of the defendants and struck out all the evidence offered by plaintiff with reference to the supplementary agreement and also struck the report of the appraisers. We hold that these rulings were erroneous. It is agreed that the supplementary contracts were executed in duplicate. Upon the trial plaintiff introduced evidence tending to show the loss of the copy kept by it. It also introduced considerable evidence both documentary and oral tending to prove that the instrument was dated December 21, 1912. Defendants introduced a document purporting to be their copy of the supplementary agreement, which copy bore the date December 19, 1912. We hold that this raised an issue of fact as to the correct date of the instrument which should have been left to the jury to determine. When the trial court ruled against the secondary evidence of plaintiff and for the document produced by defendants, it undertook to weigh the opposing evidence and to determine the fact as to the date. For defendants to argue that when one duplicate original is produced the other cannot be established circumstantially is to beg the question. Plaintiff asserts that defendants' document is not a correct duplicate original and that the true duplicate original is a document dated December 21, 1912. If the jury should believe plaintiff's testimony, it follows that defendants have not proven that their document is a duplicate original. There cannot be duplicate originals bearing different dates. The jury should have been permitted to determine the fact as to which was the real original.

Defendants attack the report of Arthur Young and Company upon the assumption that they were to act as arbitrators between the parties. This is an error. Young and Company were the agents for the pur-

chasers, invested with wide discretional powers in appraising the property. The distinction between an appraisement and an arbitration is clearly stated in *Sebree v. Board of Education*, 254 Ill. 438. It was therefore entirely proper for these appraisers to talk with the purchaser or its representatives, or with any other persons about the appraisement. They were not confined to any particular method or sources for their investigations.

None of the criticisms directed at the report justifies the refusal of the trial court to submit it to the jury. It was for the defendants to prove, if possible, that the report was unfairly made or not in conformity with the contract.

There is no merit in the point that the actual cost of materials and finished products was not taken by the appraisers as the basis for its figures upon the inventories. The evidence does not show that this was not done, but rather to the contrary. There was testimony that certain reductions were made because of overhead expenses and obsolescence. We understand this is the usual method of arriving at the value of manufactured products, but the fairness of such reductions are matters of fact to be submitted to the jury.

For the reasons above indicated the judgment is reversed and the cause is remanded for further proceedings consistent with what we have said in this opinion.

*Reversed and remanded.*

MATCHETT and DEVER, JJ., concur.